**NEHMAD DAVIS & GOLDSTEIN, P.C.**
**KEITH A. DAVIS, ESQUIRE**
Attorney ID: 025471999
**MICHAEL C. DONIO, ESQUIRE**
Attorney ID: 155612015
4030 Ocean Heights Avenue
Egg Harbor Township, New Jersey 08234
Phone: (609) 927-1177
Fax: (609) 926-9721
kdavis@ndglegal.com / mdonio@ndglegal.com
*Attorneys for Plaintiff, New Beginnings Behavioral Health*

## UNITED STATED DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW BEGINNINGS BEHAVIORAL HEALTH, JOHN DOE and JANE DOE, on behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>MAURICE RIVER TOWNSHIP, a municipal corporation of the State of New Jersey; MAURICE RIVER LAND USE BOARD; and CITY OF MILLVILLE,<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT** |

## <u>INTRODUCTION</u>

1.     New Beginnings Behavioral Health ("New Beginnings") is a religious non-profit organization whose mission is to help homeless individuals who are in recovery from drug and alcohol addiction. To that end, New Beginnings entered into a lease for a property known as "Camp Cedar Knoll", a former seasonal summer camp located in Maurice River Township, and invested over $400,000 renovating property to prepare it to operate as homeless shelter for men with enhanced services to aid their recovery from addiction, completely free of charge.

2.     New Beginnings applied to the Maurice River Township Land Use Board ("Board") for (1) an interpretation that its proposed use is permitted within the Property's zoning district, or in the alternative, (2) a use variance. New Beginnings demonstrated that it was entitled to a favorable interpretation and a use variance. However, the Board denied New Beginnings Application due to the public and the Board's discriminatory animus towards the disabled clientele that New Beginnings proposed to serve.

3.     New Beginnings appealed the Board's denial to the Superior Court of New Jersey. The Court held that New Beginnings was entitled to a favorable interpretation and remanded the

matter to the Board for further proceedings. The Board ultimately determined that New Beginnings' proposed used is a permitted use.

4.      New Beginnings brings this Complaint in response to the Board's discriminatory actions in denying its Application, requiring New Beginnings expend significant time and resources, which it could have devoted to its mission of helping homeless individuals in recovery from addiction, to receive an approval that was legally required to be granted in the first instance and was pretextually denied.

5.      New Beginnings also brings claims against the neighboring City of Millville. Once Millville received notice of New Beginnings application before the Board, Millville took official action in approving of a blatantly discriminatory Resolution opposing New Beginnings' proposed use. Millville then provided that Resolution to Maurice River in an attempt to introduce the Resolution as an exhibit before the Board during the hearings on New Beginnings' Application.

6.      The Defendants, through their discriminatory actions, have violated the Fair Housing Act, 42 *U.S.C.A.* § 3601 *et seq.* ("FHA"), Religious Land Use and Institutionalized Persons Act of 2000, 42 *U.S.C.* § 2000cc to -5, ("RLUIPA"), Americans with Disabilities Act 42 *U.S.C.* §12131, et seq. ("ADA"), 42 *U.S.C.* §1983, and Rehabilitation Act, 29 *U.S.C.* §794.

## THE PARTIES

7.      New Beginnings Behavioral Health ("New Beginnings") is a religious 501(c)(3) non-profit corporation whose primary purpose is to help homeless individuals suffering from addiction by providing them a long-term, faith-based residential setting in the form of a licensed homeless shelter in which they can recover from drug and alcohol addiction completely free of charge. New Beginnings primary place of business is located at 42 Crooked Lane, Cherry Hill, New Jersey.

8.      Defendant, Maurice River Township ("Maurice River") is a municipal corporation of the State of New Jersey located within Cumberland County with its principal place of business located at 590 Main Street, Leesburg, New Jersey 08327.

9.      Defendant, the Maurice River Township Land Use Board (the "Board") is the duly authorized planning board of Maurice River Township pursuant to New Jersey's Municipal Land Use Law ("MLUL"), *N.J.S.A.* 40:55D-25(c). The Board maintains its principal place of business at 590 Main Street, Leesburg, New Jersey 08327.

10.     Defendant the City of Millville ("Millville") is a municipal corporation of the State of New Jersey located within Cumberland County with its principal place of business located at 12 S. High Street, Millville, New Jersey 08332. Millville shares a municipal border with Maurice River.

## JURISDICTION & VENUE

11.     The Court has original jurisdiction over this matter pursuant to 28 *U.S.C.* § 1331 because this action arises under the laws of the United States.

12.     The New Jersey District Court is the proper venue pursuant to 28 *U.S.C.* § 1391 as the Defendants are all residents of the judicial district of New Jersey.

## FACTS

13.     New Beginnings is the tenant of the property located at Block 220, Lot 5 on the Municipal Tax Map of Maurice River Township, more commonly known as Camp Cedar Knoll, having a street address of 4 Schooner Landing Road (the "Property"). The Property is owned by the Bethany Baptist Association of South Jersey ("Bethany Baptist"). New Beginnings entered into a lease with Bethany Baptist in March 2021.

14.     The Property is located in Maurice River's "C" Conservation Zoning District.

15.     The Property was previously used as a seasonal summer camp, "Camp Cedar Knoll", by historically African-American churches associated with the Bethany Baptist Church. The Property contains six (6) existing structures: a dormitory, a pavilion with a baseball field and weight room, a nurse's station, a dining hall with a communal kitchen, a fellowship building with a church, library and weight room, and Bethany House. The Property also contains several miscellaneous sheds, recreational equipment, basketball courts, a volleyball court, a sand court, a pool with a shower building, and a mini-golf course. The only proposed new development is the addition of eight (8) parking spaces.

16.     New Beginnings spent over $400,000 renovating the Property to prepare it to house seventy (70) homeless men and to provide enhanced services to aid in their recovery from drug and alcohol addiction.

17.     Through mistake and inadvertence, New Beginnings began operating before seeking an interpretation that its use was permitted on the Property, or in the alternative, obtaining a use variance in the event the use was not permitted. Township took the unprecedented action of filing a Verified Complaint and Order to Show Cause against New Beginnings seeking administrative penalties and injunctive relief restraining all non-permitted uses on the Property unless New Beginnings obtained a zoning permit or variance. The litigation is captioned as CUM-L-195-23 ("Litigation").

18.     In response to the Litigation, New Beginnings voluntarily ceased its operations, vacated the premises of all residents, and applied to the Maurice River Township Land Use Board for a use variance and subsequently amended its Application to also seek an interpretation that its proposed use is permitted on the Property and sought preliminary and final major site plan approval. *See* New Beginnings Land Use Board Application attached as **Exhibit "A"**.

19.     Thereafter, the New Beginnings and Maurice River resolved the remaining issues of the Litigation by way of a Settlement Agreement.

### New Beginnings' Application

20.     New Beginnings applied to the Maurice River Township Land Use Board for a "d" use variance pursuant *N.J.S.A.* 40:55D-70d, and preliminary and final major site plan approval (the "Application") to establish a religious-based homeless shelter with enhanced services to treat men suffering from drug and alcohol addiction with a maximum of seventy (70) beds and a site plan waiver.

21.     New Beginnings amended its Application to request an interpretation under *N.J.S.A.* 40:55D-70b that its proposed use was a permitted "religious use facility" in the Conservation Zone.

22.     During one of the Board hearings, New Beginnings mentioned that its landlord, Bethany Baptist, intended to use the Property three to four times per year for church functions. The Board determined that Bethany Baptists' occasional use of the Property was a second principal use which also required a use variance. Accordingly, New Beginnings amended the Application again to include a variance to permit two primary principal uses on the Property: the homeless shelter and Bethany Baptist Church's occasional use of the Property to hold church events three to four times per year.

23.     New Beginnings submitted an "Interpretation & Variance Justification Report" (the "Report") as part of its Application. The Report explains to the Board that New Beginnings' proposed use is protected under the Federal Fair Housing Act and related Federal laws as the individuals New Beginnings will serve are considered "disabled" within the meaning of the Act. The Report further advises that as a religious use New Beginnings' application is also protected under the Religious Land Use and Institutionalized Persons Act of 2000, 42 *U.S.C.* § 2000cc to - 5, ("RLUIPA"). *See* Interpretation & Variance Justification Report attached as **Exhibit "B"**.

24.     The Board heard the Application over the course of four nights: April 5, 2023, May 3, 2023, July 5, 2023, and August 2, 2023. The Applicant was represented by Dorian Morgan, Esq., during the first two hearings, and by Keith A. Davis, Esq. of Nehmad Davis & Goldstein, P.C. thereafter.

## The Interpretation

25.     "Religious use facilities" are a permitted use in the "C" Conservation District where New Beginnings' Property is situated.

26.     Maurice River Municipal Code §35-3.3, defines "religious use facility" as a structure or use of land or buildings by a non-profit organization for religious activities or by a religious organization for educational, charitable, or eleemosynary or philanthropic purposes. New Beginnings' proposed use clearly meets the definition of a "religious use facility" as a religious based non-profit organization that houses homeless individuals free of charge.

27.     During Board hearing, there was a discussion of how an overlay district, the River Conservation ("RC") overly district, affected permitted uses of the Conservation district.

28.     New Beginnings' professional planner, Lance Landgraf, Jr., explained that the Property is located in the Conservation district and the River Conservation overlay district.

29.     Mr. Landgraf opined that the RC District's permitted uses were *in addition* to the uses permitted in the Conservation district. In other words, the RC overlay district uses do *not* supersede the uses of the underlying Conservation district.

30.     Mr. Landgraf further concluded that New Beginnings' use constituted a "religious use facility" as defined in Maurice River's Municipal Code. Therefore, New Beginnings' proposed use was permitted. As stated above, the Board arbitrarily decided that the RC overlay district

31.     Maurice River Municipal Code §35-8.12(A) unequivocally states that the development requirements of the RC overlay district are "in addition" to those of the underlying zoning district:

> The River Conservation District is established as an overlay zone, imposing a set of development requirements **in addition** to those of the existing, underlying zoning district. The RC River Conservation Zone is depicted on the Maurice River Township Zoning Map - River Conservation Zone District. Any development standards not expressly provided in the River Conservation District shall be governed by the underlying zoning district. Where there is a conflict between the development standards provided for in the RC Overlay District and the development standards provided for in the underlying zoning district, the most stringent requirement shall apply. The RC zone shall not apply to those area governed by the Pinelands Management Area.

> [Maurice River Municipal Code § 35-8.12(A)(emphasis added)]

32.     No part of the Code states that the permitted *uses* of the RC overlay district supersede the uses of the underlying zoning district. Therefore, "religious use facilities" are permitted in the Conservation district and are unaffected by the RC overlay district.

33.     Rather than recognize the clear text of its own ordinance, the Board held that the RC district uses *superseded* the uses of the underlying zoning district. The Board's tortured interpretation of its zoning code relied entirely upon a single footnote in the Schedule of District Regulations for the "C" district which states as follows:

> **Standards** as contained in this Schedule may be superseded if the lands involved are within the RC River Conservation Overlay District. Check the Zoning Map and Section 35-8.12 to determine applicability and specific requirements of the RC River Conservation Overlay District.

> [*See* Schedule of District Regulations – C Conservation District attached as **Exhibit "C"**. (emphasis added)]

34.     Contrary to the Board's decision, the footnote does not refer to "uses;" rather, the footnote explicitly refers only to development "standards." However, the Board concluded that the RC overlay district uses superseded the Conservation district uses.

35.     Since the Board decided that religious use facilities were not a permitted use, it did not decide whether the New Beginnings' proposed use constituted a "religious use facility" within the meaning of Maurice River's Municipal Code.

## The Use Variance

36.     After the Board's arbitrary denial of New Beginnings' request for a favorable interpretation, New Beginnings sought its alternative relief: a use variance.

37.     New Beginnings provided testimony from its CEO Pastor Amir Khan. Pastor Khan explained that New Beginnings will operate a homeless shelter licensed by the New Jersey Department of Community Affairs ("DCA") with additional services to treat those suffering from addiction such as therapy, on-site telehealth appointments with medical professionals, off-site

medical treatment and medication management, and on-site Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") meetings.

38.    New Beginnings' faith-based approach is critical to its success. To that end, New Beginnings provides religious instruction, such as bible study, and church services as an integral facet of its addiction treatment program. Moreover, New Beginnings' buildings are adorned with religious art as well as inspirational passages from the Bible.

39.    Pastor Khan explained that typical recovery centers have a success rate of only 15% to 20%; however, New Beginnings boasts a success rate closer to 70%. According to Pastor Khan the difference can be attributed to the faith-based aspect of New Beginnings' program, or as Pastor Khan calls it: "the Jesus factor."

40.    New Beginnings does not require its residents to have insurance, Medicaid, or the like. New Beginnings operates on a wholly charitable basis.

41.    Tyrone Haymen, a former resident of New Beginnings at Camp Cedar Knoll while it was briefly operational, testified in support of New Beginnings before the Board. Mr. Haymen explained that he became addicted to drugs after taking prescribed medication for a pain in his hip.

42.    Mr. Haymen had a positive experience at New Beginnings and the faith-based aspects of the program were a significant factor in his success.

43.    Mr. Haymen testified that when New Beginnings was required to cease operations, it had a negative effect on his recovery efforts. Mr. Haymen explained that a couple of the other participants in the program had relapsed, and one individual unfortunately died, all of which Mr. Haymen attributed to New Beginnings ceasing operations at Camp Cedar Knoll.

44.    Professional Planner Lance Landgraf, Jr., also testified in support of New Beginnings' request for a use variance.

45.    Mr. Landgraf explained that local Boards may grant a use variance where an applicant demonstrates that the proposed use advances one or more of the purposes of zoning as codified in New Jersey's Municipal Land Use Law, *N.J.S.A.* 40:55D-1 to -163 ("MLUL"), commonly referred to as the "positive criteria" and so long as the proposed use is not a substantial detriment to the public good and will not impair the intent and purposes of the municipal zoning plan, commonly referred to as the "negative critera."

46.    Mr. Landgraf explained that New Beginnings' proposed use is considered "inherently beneficial" and thereby presumptively satisfies the positive criteria.

47.    Under New Jersey law, the benefit of an inherently beneficial use may be measured according to the region's need for the proposed use. Mr. Landgraf testified that there was a great need for New Beginnings' services in the area. In Cumberland County alone, nearly 30% of the population is experiencing some kind of homelessness or addiction.

48.    Mr. Landgraf's testimony regarding the regional need for New Beginnings' services was supported by two other witnesses: Dr. Joseph Savon, the founder and medical director of New Life Medical Addiction Services, board certified with the American Board of Addiction Medicine, and a fellow of the American Society of Addiction Medicine; and Alan Oberman who

has worked in the field of addiction for over thirty-five (35) years and was the CEO of an out-patient addiction treatment facility before he retired.

49.     At a prior hearing, a member of the public claimed that there was not a need for New Beginnings because there were 363 residential drug treatment facilities within a fifty (50) mile radius of the Property. The member of the public submitted a printout of his Google searches for such facilities as an exhibit.

50.     Only two of the identified facilities in the exhibit were long-term residential facilities bearing any similarity to New Beginnings. However, none of those facilities provided faith-based services, nor did any of those facilities operate on a completely charitable basis.

51.     Dr. Savon concluded it was "absolutely unquestionable" that New Beginnings would help to meet a demonstrable need to treat those who are homeless and suffering from addiction.

52.     Mr. Oberman explained that based upon statistics from the New Jersey Division of Mental Health and Addiction from 2021, 65.8% Cumberland County residents who need treatment for addiction are unable to receive treatment due to a lack of facilities.

53.     Mr. Oberman researched in-patient addiction treatment facilities in the region. None of the in-patient facilities he identified had an emphasis on serving the homeless. Moreover, Mr. Oberman contacted the four in-patient facilities in the region and found that *none* had open beds.

54.     Thus, the testimonies of Dr. Savon and Mr. Oberman established the dire need for New Beginnings' proposed use in the region.

55.     Mr. Landgraf concluded that New Beginnings' proposed use is not a substantial detriment to the public good because New Beginnings will only use the existing structures on the site with no additional clearing or major development. The only proposed development, eight parking spaces, is minor.

56.     The isolated rural nature of the area was an added benefit. The buildings where activities will occur on the site are approximately 1,100 feet from any adjoining uses, and nearly 1,300 feet from the nearest residential property. Accordingly, Mr. Landgraf was of the opinion that there is no negative impact on the surrounding properties or the public good.

57.     Mr. Landgraf also concluded that granting the use variance would not impair the intent and purposes of the zone plan because the master plan encourages uses that promote the general welfare. Therefore, New Beginnings satisfied the "negative criteria" for the grant of a use variance.

58.     Thus, Mr. Landgraf concluded that New Beginnings had met its burden for a use variance.

59.     Tiffany Morrissey, the Board's professional planner, essentially agreed with Mr. Landgraf's conclusions.

60.     Mrs. Morrissey agreed that New Beginnings' proposed use is inherently beneficial. With respect to the "negative criteria" Mrs. Morrisey explained that the key was whether there would be a *substantial* detriment to the public good and zoning ordinance.

61.    Mrs. Morrisey noted that New Beginnings' proposed year-round use of the site, as opposed to the prior seasonal use of the site, would be an impact, however that impact should be given less weight because New Beginnings will not be clearing the site or constructing buildings, rather New Beginnings proposed to use the existing buildings on the Property. As she put it: "[t]his site is already disturbed. It's not a clean virgin site where they're coming in and taking things away, so that's unique to the property."

## The Board's Pretextual Concerns

62.    Throughout the hearing process, the Board voiced pretextual concerns with the Application in an attempt to justify their pre-determined denial.

63.    Both the Board and members of the public were particularly concerned with the security of New Beginnings premises. The Board and the public's security concerns were a result of their preconceived stereotypes of homeless individuals and individuals recovering from addiction. New Beginnings is not a prison, nor are its residents prisoners. All New Beginnings residents are there voluntarily.

64.    However, in order to address the Board and the public's perceived security concerns, New Beginnings agreed to substantial security measures. As a condition of approval New Beginnings agreed to have 24/7 security on the premises, install surveillance cameras, install alarms on doors, repair the fence surrounding the Property, and install a motorized gate at the entrance of the property. The additional security measures were estimated to cost approximately $60,000, not including the motorized gate.

65.    New Beginnings also agreed that all activities would be conducted on-site. Any time a resident would like to go off-site, such as to go fishing at the adjacent river, the resident will be required to be accompanied by a staff member.

66.    The Board expressed concerns with the number of non-emergency 911 calls originating from New Beginnings when it was briefly operational. Pastor Khan explained that staff were inadvertently calling 911 for non-emergency situations. New Beginnings' staff received additional training to prevent unnecessary 911 calls in the future.

67.    The Board claimed it was concerned with the existing septic system on the Property; however, the septic system is subject to outside state and/or county agency approvals; the Board has no jurisdiction over septic approvals.

68.    In response to the Board's concerns, New Beginnings also provided testimony from Sanford Mersky a licensed engineer who in his career has worked on 35,000 to 50,000 septic projects.

69.    Mr. Mersky confirmed that the New Jersey Department of Environmental Protection ("NJDEP") has exclusive jurisdiction over the septic approval for the Property – not the Board.

70.    Mr. Mersky further explained that there is a T1 permit for the Property for its pre-existing use, but an application would be needed for the new proposed use. Mr. Mersky agreed that any such applications will be submitted to the Board as a condition of any approval granted.

Mr. Mersky opined that the existing septic facilities on the Property would accommodate New Beginnings' proposed use.

71.     Junetta Dix, one of the objector's experts, submitted a report to the Board claiming that the sanitation/sewage flows on the Property would be significantly increased if the Board granted the Application.

72.     However, the Board engineer Cormac Morrisey disagreed with Mrs. Dix's conclusion. According to Mr. Morrisey, the resulting flow could be more, but it could also be less – there was no way to know based on the information before the Board.

73.     The Board also focused on the issue of wetlands and other environmentally sensitive areas on the Property. This is despite the fact that like the septic issue, the Board has no jurisdiction over such issues. Moreover, this is also despite the fact that the Property is already developed, and the only additional development (initially adding eight parking spaces) is minor.

74.     Kristin Wildman, an environmental consultant, and professional wetlands scientist, evaluated the Property for wetlands jurisdiction, flood hazard jurisdiction, and coastal constraints, all of which is regulated by the NJDEP – not the Board.

75.     Ms. Wildman explained that the reuse of legally existing structures did not require DEP permits but the additional parking spaces would require DEP approval if located within freshwater wetlands, riparian zones, flood hazard areas, or a waterfront development area.

76.     Based upon Ms. Wildman's site visit and knowledge of NJDEP regulations, she did not believe the proposed parking spaces were located within protected areas and could be constructed, and that any approvals for the parking spaces would be secured as a condition of any approval granted.

77.     Since the time this application was considered, New Beginnings received written confirmation from the New Jersey Department of Environmental Protection in a jurisdictional determination dated June 12, 2024 confirming that the project does not require a Waterfront Development Permit, CAFRA Permit or Coastal Wetlands Permit. *See* NJDEP Letter dated June 12, 2024 attached as **Exhibit "D"**.

### Public Comment

78.     The public comments throughout the hearings demonstrated the outright discriminatory animus many residents had towards homeless individuals and individuals in recovery from substance abuse.

79.     Numerous members of the public stated that they were concerned for their security due to the proposed facility.

80.     Jose Silva stated that he was seeing people "who do not look like they belong" in Maurice River Township walking from the facility; that he as an attorney has represented "quite a few of the individuals that may be in [the] facility," and that he "did not want them in [his] neighborhood."

81.     One member of the public argued that the community should be investing in the youth rather than "people who had their chance and blew it."

82.     Another member of the public stated that he would be fearful of having "people like that" in Maurice River.

83.     Bill Peachy asked what would happen when one of New Beginnings' residents "decides to go out and get his fix and go to my old man's house and rob him so he can go up to 2nd Street and buy drugs, who's responsible for that?" Mr. Peachy's comment was met with applause from the public.

84.     Peter Lesche characterized New Beginnings as "a rest home for druggies and criminals" and asked "what guarantee do we have as a community that [New Beginnings] is not also going to be a sex offender depot, cause trust me, I don't care how much Jesus you try to put into a sex offender, it's not working. Anybody agree?" Mr. Lesche's comment was also met with applause.

85.     Despite the clear animus and NIMBY sentiments from the public, a few members of the public supported the application.

86.     One member of the public during the July 5, 2023 hearing stated that voting against New Beginnings' application would be "voting against your own children's futures," and that her first-hand experience taught her that more beds are needed for individuals suffering from addiction.

87.     Timothy Roberson spoke in support of the application by highlighting Pastor Khan's history of helping the homeless and individuals suffering from addiction. Mr. Roberson explained that New Beginnings is unique because all the services it offers are free.

88.     Christa Hill supported the Application because even though there are other rehabilitation facilities, there are no beds available for even short-term detox, let alone the type of long-term stays that New Beginnings offers.

89.     Jason Piotrowski, a Captain from the New Jersey State Police who oversees the State Police's Drug Monitoring Initiative, spoke in support of the Application. Mr. Piotrowski explained that based on his experience there is a clear need for more recovery facilities.

**Miville Attempts to Interfere with New Beginnings' Application**

90.     The City of Millville was served with notice of New Beginnings' Application because the Property is located within 200 feet of Millville's boundary line.

91.     In an attempt to coerce Maurice River into denying the Application, Millville's Board of Commissioners adopted a Resolution opposing New Beginnings' Application. *See* Resolution No. 192-2023 attached as **Exhibit "E"**.

92.     The Millville Board of Commissioners considered the Resolution at its June 20, 2023 meeting[1].

---

[1] Video of the June 20, 2023, Board of Commissioners meeting can be viewed at https://youtube.com/live/ZPO7nt6AmVY?feature=sharec

93.    Commissioner Sooy commented on the Resolution opposing New Beginnings request for a use variance.

94.    Mr. Sooy stated that he had been speaking with Millville residents, the mayor of Maurice River, and one of the committee members of Maurice River about New Beginnings' Application.

95.    Mr. Sooy stated: "I don't want homeless in my neighborhood, I don't want drug addicts in my neighborhood, and I don't want those facilities in my neighborhood."

96.    Mr. Sooy claimed "a lot of times when we help them, we enable them" further stating "if you create a shelter, they will come. If you create a place for them to get free food, they will come. I don't want them to come here I really don't."

97.    Mr. Sooy then claimed that the only thing that works is what Miami did which was "ship them[2] out of town."

98.    Mr. Sooy went on to state he opposed the Application because "they're going to come to Millville, they're going to walk this way, they absolutely will."

99.    Mr. Sooy ended his comments by stating "and I probably got in trouble with half of the population of Millville for saying that but when this came up today I was going to make somebody mad, so there it is."

100.    Commissioner Hewitt agreed with Mr. Sooy.

101.    The Millville Board of Commissioners unanimously (5-0) voted in favor of the Resolution.

102.    During the July 5, 2023 Maurice River Land Use Board hearing, Millville attempted to enter the Resolution into evidence for the Board's review and consideration over the objection of New Beginnings' counsel.

103.    While the Resolution was ultimately not entered into the record, the damage had already been done, the Board had knowledge of Millville's resolution. Moreover, Millville Council members admitted they spoke with elected officials and residents of Maurice River Township about New Beginnings' Application.

### Mr. Van Embden's Charge to the Board

104.    Prior to the vote, the Board Attorney Nathan Van Embden, Esq. provided the Board with the legal framework by which they were required to evaluate the Application.

105.    Mr. Van Embden advised that the Board could reduce the approval to less than the requested seventy beds if they felt a seventy-bed facility was too intense of a use. He further advised that any approval could be conditioned on New Beginnings obtaining all required outside agency approvals including septic permits, NJDEP permits, a wetlands delineation, and a letter of interpretation.

106.    Moreover, Mr. Van Embden reminded the Board of the substantial measures that New Beginnings agreed to take to assuage the Board and the public's perceived concerns including

---

[2] "Them" refers to the homeless.

agreed to including maintaining all operations on-site, repairing all fences, installing a motorized gate, installing surveillance cameras, engaging a security company, maintaining security/staff on site 24/7, and modifying its procedures to reduce the number of non-emergency 911 calls.

107.     Mr. Van Embden also reminded the Board that New Beginnings was not proposing any new development except for the addition of eight parking spaces, and that New Beginnings was not required to demonstrate absolutely *no* negative effect will occur from the grant of the variance, just that it would not outweigh the net benefit of the proposed use.

108.     Finally, Mr. Van Embden advised the Board that New Beginnings' proposed use is protected under several federal laws including the Fair Housing Act, Religious Land Use and Institutional Persons Act, Americans with Disabilities Act, and the Rehabilitation Act. Therefore, there was a risk of costly litigation with fee-shifting in the event the Board arbitrarily denied the Application.

## The Board's Deliberations and Decision

109.     At the close of the Public Comment portion of the hearing the Board discussed the Application and voted.

110.     The Board's Planner Tiffany Morrisey explained that granting the variance would not be a detriment to the Township's zoning ordinance because the site is already developed, and additional permitting will be required which protects the environmentally sensitive aspects of the site.

111.     Moreover, Mrs. Morrisey explained that the impact due to any perceived intensification of the use is mitigated by the fact that New Beginnings only intends to use existing buildings on the site and proposes no new construction.

112.     Chairman Stowman suggested to his fellow Board members that they could approve New Beginnings' proposed use on a smaller scale (e.g. 35 beds instead of 70) if they were uncomfortable with the 70 beds as proposed. However, the other Board members did not entertain the idea.

113.     Lillian Johnson, an alternate Board member, stated that she would have voted in favor of the Application because she witnessed the negative effects of drug addiction on society and the need for a facility like New Beginnings in her profession as an EMT. She explained that people suffering from addiction typically are taken to the hospital in need of help but are released only a few hours later once they sober up. Ms. Johnson testified that she has been personally affected by addiction as her brother died from an overdose and her nephew is in recovery from drug addiction.

114.     Ms. Johnson further pointed out that while there was much discussion about the environmental impacts to the site, she perceived that the real objection to the Application was simply that people did not want this type of use in their backyards and noted that throughout the course of the hearings New Beginnings' residents were referred to as "druggies." She further explained that New Beginnings was addressing the Board's concerns, such as security, and that New Beginnings is trying to make sure the use is appropriate for the area.

115.     Charles Thompson stated that he was concerned with the use being more intense than the seasonal summer camp and it being in a conservation zone. Mr. Thompson also claimed

that the site was too far from the nearest hospital. Mrs. Morrisey explained that the distance of the Property from the nearest hospital was not a relevant consideration.

116.    Johanna Carrara voted against the Application claiming that the master plan and zoning will be impacted, ignoring the advice of the Board planner.

117.    Before voting "no" on the application, Board member Robert Chard stated that he had discussions with township residents about the application outside of the Land Use Board hearing process and that residents appeared to be against it:

> I've had discussion[s] with township residents. I haven't heard anybody other than a couple people voice approval for it. Everybody else appears, the township residents, appear to be against it. It's a shame how we can vote against the township residents.

118.    Mr. Chard's comment was met with applause from the public.

119.    The Board's attorney, Nathan Van Embden, Esq., admonished Mr. Chard for his comments, explaining that while his reasoning for voting against the Application may be popular, it would not be sustained on appeal. Mr. Chard responded, "That's what's funny" and "It's what's right."

120.    Glenn Ewan voted "no" claiming that he had "a problem with the location, not the services."

121.    Patrick Philips voted "no" referring to the environmental impact and claiming that the Applicant adding surveillance cameras was not enough security.

122.    Robert Chard and Charles Thompson also voted "no."

123.    Mr. Chard had a clear animus towards individuals in recovery from drugs and alcohol stating, "you just can't trust them."

124.    Roger Hoffman voted "yes."

125.    Chairman Stowman explained that in his view any negative impacts could be regulated and voted yes.

126.    The Board voted to deny the use variance by a vote of 5-2 and memorialized its denial in Resolution No. 2023-05. *See* Resolution 2023-05 attached as **Exhibit "F"**.

127.    Notice of Resolution 2023-05 was published on October 16, 2023. *See* October 16, 2023 Notice attached as **Exhibit "G"**.

## The Appeal

128.    On November 27, 2023, New Beginnings filed a Complaint in lieu of Prerogative Writs ("Complaint") in the New Jersey Superior Court, Law Division appealing the Board's decision as arbitrary, capricious, unreasonable, and based upon the Board and the public's discriminatory animus towards the disabled clientele New Beginnings intends to serve. New Beginnings' Complaint also included claims under the New Jersey Law Against Discrimination against Maurice River and the City of Millville. New Beginnings subsequently amended its

Complaint to include an exhibit that was inadvertently not included with the original complaint. *See* Amended Complaint in Lieu of Prerogative Writs attached as **Exhibit "H"**.

129.    The Court heard oral argument on the prerogative writ issues on March 19, 2024.

130.    In response to a question from Judge Telsey as to how New Beginnings' proposed use would a religious use have a negative environmental impact on the site, which was one of the Board's purported reasons for denying the New Beginnings' Application, Maurice River's counsel, Matthew Behr, Esq., responded that New Beginnings may have baptisms in the nearby Menitico River or even practice animal sacrifice.

131.    New Beginnings thoroughly explained the nature of its use over four nights of hearings before the Board and never claimed it would conduct baptisms in the nearby river or that it would practice animal sacrifice.

132.    On April 4, 2024, the Honorable Benjamin C. Telsey, A.J.S.C., entered an order and decision reversing the Board's determination that "religious use facilities" were not a permitted use on New Beginnings' Property and remanding the matter for further proceedings before the Board to determine whether New Beginnings proposed use constituted a "religious use facility" within the meaning of Maurice River's Municipal Code. *See* April 4, 2024 Order and Opinion attached as **Exhibit "I"**.

133.    The Court did not reach a decision on New Beginnings' appeal of the use variance denial as that aspect was rendered moot due to the Court's reversal of the Board's decision on the interpretation issue and the remaining claims against Maurice River and Millville were held in abeyance.

### The Remand Hearings

134.    New Beginnings re-appeared before the Board on May 1, 2024 for the Board to determine whether New Beginnings proposed use constitutes a "religious use facility."

135.    The Board held that New Beginnings' proposed use was a "religious use facility" and therefore permitted.

136.    The Board memorialized its decision in Resolution 2024-10 which was adopted on June 5, 2024. *See* Resolution 2024-10 attached as **Exhibit "J"**.

137.    The Resolution, however, contains inaccurate information which upon information and belief will be used by the Township to issue pretextual notices of violation against New Beginnings.

138.    The Resolution states:

> The issue of dual use by the applicant and the landlord is not presently before the Board and no determination is made as to whether the inclusion of Bethany Baptist Association functions on the same site with the applicant's homeless shelter and drug rehab use operations is permitted.

*See* **Ex. "J"**, pg. 8, ¶6.

139.    In other words, the Board has explicitly left open the question of whether Bethany Baptist's occasional use of the Property for church functions constitutes a second principal use which requires a use variance.

140.    Upon information and belief, the quoted language in the Resolution will be used by the Township as a pretext to further harass New Beginnings by claiming its use requires a use variance for two principal uses even though the religious use facility was clearly presented as one land use (that is, the homeless shelter with Bethany Baptist's periodic use of the property for events).

141.    The quoted language from the Resolution is also inaccurate and not supported by the record below.  Testimony was provided by Pastor Khan during the second interpretation hearing that the congregants of Bethany Baptist cook for residents of the homeless shelter and support them as part of their spiritual mission to show that both aspects of the use are symbiotic and connected. *See* May 1, 2024 Land Use Board Minutes attached as **Exhibit "K"**, pg. 5.

142.    New Beginnings presented its proposed use as a single use at all times during the interpretation hearing.

143.    At the close of the May 1, 2024 hearing on the interpretation issue, New Beginnings' counsel reiterated that the Application has been presented as a single use that fits the definition of a "Religious Use Facility" under Maurice River Township's municipal code. *See* **Ex. "K"**, pg. 9.

144.    New Beginnings' Notice of Hearing, which the Board accepted to entertain jurisdiction over the application, made no reference to a dual use. The notice states in relevant part as follows:

> [N]otice is hereby given that a written application has been filed by the undersigned with the Maurice River Township Land Use Board for (1) a favorable interpretation pursuant to N.J.S.A. 40:55D-70b that the Applicant's proposed use and operation of a homeless shelter with faith-based substance abuse recovery services to include bible study, religious services, therapy and related activities within the existing structures on the property as well as the continued use of the property as a church retreat/campground facility for special events, barbecues and similar social and religious activities constitutes a "religious use facility" as that term is defined by the Land Development Regulations of Maurice River Township, Section 35-3.3
>
> *See* Notice of Hearing attached as **Exhibit "L"**.

145.    The Board never made a finding that New Beginnings proposed two principal uses on the site.

146.    Moreover, subsequent to the Board's decision on the interpretation issue, New Beginnings applied for site plan approval on June 5, 2024.

147.    Mayor Whildin and Committeeman Sterling sat on the plan application as Class I and Class III members of the Board, respectively.

148.     Under New Jersey law, Class I and Class III board members are prohibited from sitting on application where a use is *not* permitted. Therefore, had the Board considered New Beginnings as having two principal uses, Mayor Whildin and Committeeman Sterling would have been prohibited from sitting on the application.

149.     In response to a question from a member of the public regarding the dual use issue, the Board's professional planner, Tiffany Morrissey, reviewed the minutes of the May 1, 2024 meeting and confirmed that the proposal was for New Beginnings to operate a homeless shelter and use the grounds for church functions all as a single use which constituted a permitted "Religious Use Facility." *See* **Ex. "K"**.

150.     Further, the Board's engineer, Cormac Morrisey, issued a review memorandum for the site plan application on May 29, 2024. The memorandum does not indicate that New Beginnings use was dual use requiring a use variance.

151.     Accordingly, there is no basis for Resolution 2024-10's reference to a dual use.

152.     New Beginnings, through its counsel, sent a letter to the Board's counsel, Nathan Van Embden, Esq., indicating that the Resolution's reference to a dual use is inaccurate and must be removed from Resolution. *See* Letter dated June 17, 2024 attached as **Exhibit "M"**.

153.     To date, New Beginnings has not received a response from the Board or its attorney indicating whether it would remove the erroneous refence to a dual use from Resolution 2024-10.

### COUNT I
### Fair Housing Act, 42 *U.S.C.A.* § 3601 *et seq.* ("FHA")
### (*Maurice River Township and Land Use Board*)

154.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if repeated and set forth at length herein.

155.     Under the Fair Housing Act ("FHA"), it is unlawful to discriminate, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of a person residing in or intending to reside in that dwelling or any person associated with that buyer or renter. 42 *U.S.C.A.* § 3604(f)(1).

156.     It is also unlawful under the FHA to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person, a person residing in or intending to reside in that dwelling, or any person associated with that person. 42 *U.S.C.A.* § 3604(f)(2).

157.     The FHA makes it unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 *U.S.C.A.* § 3604(f)(3)(B).

158.     Courts interpreting the "reasonable accommodation" requirement of the FHA have held that municipalities must "change, waive, or make exceptions in their zoning rules to afford people with disabilities the same opportunity to housing as those who are without disabilities." *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996).

159.    The FHA prohibits discriminatory land use decisions, "even when such decisions are ostensibly authorized by local ordinance." *Oxford House, Inc., supra*, 799 F. Supp. at 458.

160.    New Beginnings is associated with and provides housing for individuals in recovery from addiction to drugs and alcohol.

161.    The FHA's definition of "handicap" includes alcoholism and drug addiction. *Oxford House, Inc., supra*, 799 F. Supp. at 459.

162.    Accordingly, the individuals who will reside at the Property and participate in New Beginnings' program are considered disabled and protected under the FHA.

163.    New Beginnings' request for a favorable interpretation that its proposed use is permitted in the Conservation zone and its request for a use variance to operate a homeless shelter with enhanced services for individuals in recovery from addiction are reasonable accommodations which New Beginnings and its disabled clientele are entitled to under the FHA.

164.    Neither of New Beginnings' requested reasonable accommodations would have imposed an undue hardship or a substantial burden upon the Defendants, nor would they have fundamentally altered any existing zoning or land use regulations.

165.    The Maurice River Land Use Board's denial of New Beginnings' request for a favorable interpretation and request for a use variance was intentionally discriminatory because the Board acquiesced to public pressure to keep New Beginnings out of Maurice River due to the Board's, Maurice River's, and the public's discriminatory animus towards the disabled population that New Beginnings serves.

166.    The Township consulted with, worked in concert with, and/or encouraged the City of Millville to pass Resolution No. 192-2023 opposing New Beginnings' application before the Board.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.    Declaring that the Defendants Maurice River Township and its Land Use Board have engaged in discrimination prohibited under the Fair Housing Act, 42 *U.S.C.A.* § 3601 *et seq.*;

B.    Awarding Compensatory and punitive damages pursuant to 42 *U.S.C.A.* § 3613c(1);

C.    Awarding counsel fees and costs pursuant to 42 *U.S.C.A.* § 3613c(2);

D.    Any other relief the Court deems equitable and just.

<u>**COUNT II**</u>
**Fair Housing Act, 42 *U.S.C.A.* § 3601 *et seq.* ("FHA")**
**(*City of Millville*)**

167.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if repeated and set forth at length herein.

168.     Under the Fair Housing Act ("FHA"), it is unlawful to discriminate, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of a person residing in or intending to reside in that dwelling or any person associated with that buyer or renter. 42 *U.S.C.A.* § 3604(f)(1).

169.     It is also unlawful under the FHA to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person, a person residing in or intending to reside in that dwelling, or any person associated with that person. 42 *U.S.C.A.* § 3604(f)(2).

170.     New Beginnings is associated with and provides housing for homeless individuals in recovery from addiction to drugs and alcohol.

171.     The FHA's definition of "handicap" includes alcoholism and drug addiction. *Oxford House, Inc., supra*, 799 F. Supp. at 459.

172.     Accordingly, the individuals who will reside at the Property and participate in New Beginnings' program are considered disabled and protected under the FHA.

173.     The City of Millville passed Resolution No. 192-2023 opposing New Beginnings' Application. Millville then attempted to enter Resolution No. 192-2023 into evidence during the hearing on New Beginnings' Application.

174.     The discussion prior to the governing body's vote on Resolution No. 192-2023 demonstrates that Millville's opposition to New Beginnings' Application was solely due to its discriminatory animus towards the disabled clientele New Beginnings intended to serve, specifically individuals in recovery from drug and alcohol addiction.

175.     Millville intentionally discriminated against New Beginnings' disabled residents and interfered with their ability to reside in New Beginnings' Property.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.   Declaring that the Defendant the City of Millville has engaged in discrimination prohibited under the Fair Housing Act, 42 *U.S.C.A.* § 3601 *et seq.*;

B.   Awarding Compensatory and punitive damages pursuant to 42 *U.S.C.A.* § 3613c(1);

C.   Awarding counsel fees and costs pursuant to 42 *U.S.C.A.* § 3613c(2);

D.   Any other relief the Court deems equitable and just.

## COUNT III
### Religious Land Use and Institutionalized Persons
### Act of 2000, 42 *U.S.C.* § 2000cc to -5, ("RLUIPA")
### (*Maurice River Township and Land Use Board*)

176.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if repeated and set forth at length herein.

177.     RLUIPA prohibits state and local governments from implementing a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person unless the government can demonstrate that (1) the burden is in furtherance of a compelling governmental interest, and (2) it is the least restrictive means of furthering the compelling governmental interest. 42 *U.S.C.A.* § 2000cc(a).

178.     RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 *U.S.C.A.* § 2000cc-5. Further, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." *Ibid*.

179.     Federal Courts have interpreted the term "religious exercise" to cover "most any activity that is tied to a religious group's" mission. *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 288 (S.D.N.Y. 2009).

180.     The activity does not have to be compelled by one's religion; it is enough to show that the activity is "a sincere exercise of religion." *Ibid*.

181.     RLUIPA defines "Land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 *U.S.C.A.* § 2000cc-5.

182.     RLUIPA must be broadly construed in favor of protecting religious exercise. 42 *U.S.C.A.* § 2000cc-3.

183.     The Applicant's mission to help the homeless and individuals recovering from drug and alcohol addiction is wholly based upon its sincerely held religious beliefs.

184.     Moreover, religious instruction is an integral aspect of New Beginnings' program for its residents.

185.     Accordingly, New Beginnings' use of the Property constitutes a "religious exercise" under RLUIPA.

186.     Maurice River Township and its Land Use Board implemented a land use regulation in a manner that imposed a substantial burden on New Beginnings' religious exercise. Specifically, the Defendants unreasonably interpreted its land use ordinance to conclude that New Beginnings' use was not permitted on the Property, and denied New Beginnings' Application for a use variance despite meeting the criteria the same.

187.    The Township consulted with, worked in concert with, and/or encouraged the City of Millville to pass Resolution No. 192-2023 opposing New Beginnings' application before the Board.

188.    The aforementioned burdens on New Beginnings' religious exercise were not furtherance of a compelling governmental interest, nor were they the least restrictive means of furthering a compelling governmental interest.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.  Declaring that the Defendants Maurice River Township and its Land Use Board have engaged in discrimination prohibited under the Religious Land Use and Institutionalized Persons Act of 2000, 42 *U.S.C.* § 2000cc to -5;

B.  Awarding Compensatory damages, punitive damages, and any other relief the Court deems appropriate pursuant to 42 *U.S.C.A.* § 2000cc-2a;

C.  Awarding counsel fees and costs pursuant to 42 *U.S.C.A.* § 1988b;

D.  Any other relief the Court deems equitable and just.


## <u>COUNT IV</u>
### Americans With Disabilities Act 42 *U.S.C.A.* §12131, *et seq*. ("ADA")
### (*Maurice River Township and Land Use Board*)

189.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if repeated and set forth at length herein.

190.    The Americans with Disabilities Act ("ADA"), 42 *U.S.C.A.* §12131, *et seq.* provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 *U.S.C.A.* §12132.

191.    The ADA defines "public entity" as "any State or local government," and "any department, agency special purpose district, or other instrumentality of a State or States or local government." 42 *U.S.C.A.* §12131(1)(A)-(B). Therefore, both Maurice River Township and the Maurice River Land Use Board are "public entities" within the meaning of the ADA.

192.    The prospective residents of New Beginnings are qualified individuals with a disability as defined by the ADA. Therefore, New Beginnings is associated with and provides housing to people with disabilities as defined in 42 *U.S.C.A.* §12102(1)(A).

193.    The requirements of the FHA and ADA are "essentially the same," accordingly, federal courts "have concluded that the FHAA analysis can be applied to ADA claims as well as such cases where claims are brought under [both] statutes." *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 914 (D.N.J. 2019)(citations omitted).

194.    The Township and the Board intentionally discriminated against New Beginnings' disabled residents by denying its Application solely due to public pressure which was a result of the public's discriminatory animus towards New Beginnings' disabled clientele.

195.    The Township and the Board refused to provide a reasonable accommodation to New Beginnings and the disabled population it serves by denying its request for a reasonable accommodation in the form of either a favorable interpretation that New Beginnings' proposed use was permitted, or by granting New Beginnings a use variance which it was entitled to under New Jersey law.

196.    The Township consulted with, worked in concert with, and/or encouraged the City of Millville to pass Resolution No. 192-2023 opposing New Beginnings' application before the Board.

197.    The Township and the Board's conduct violates the ADA.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.  Declaring that the Defendants Maurice River Township and its Land Use Board have engaged in discrimination prohibited under the Americans with Disabilities Act ("ADA"), 42 *U.S.C.A.* §12131, *et seq.*;

B.  Awarding Compensatory damages, punitive damages, and any other relief the Court deems appropriate pursuant to 42 *U.S.C.A.* §12133 and 29 *U.S.C.A.* §749a;

C.  Awarding counsel fees and costs pursuant to 42 *U.S.C.A.* §12133 and 29 *U.S.C.A.* §749a; and

D.  Any other relief the Court deems equitable and just.

<u>**COUNT V**</u>
**Americans With Disabilities Act 42 *U.S.C.A.* §12131, *et seq.* ("ADA")**
**(*City of Millville*)**

198.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if repeated and set forth at length herein.

199.    The Americans with Disabilities Act ("ADA"), 42 *U.S.C.A.* §12131, *et seq.* provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 *U.S.C.A.* §12132.

200.    The ADA defines "public entity" as "any State or local government," and "any department, agency special purpose district, or other instrumentality of a State or States or local government." 42 *U.S.C.A.* §12131(1)(A)-(B). Therefore, the City of Millville is a "public entity" within the meaning of the ADA.

201.    The prospective residents of the New Beginnings are qualified individuals with a disability as defined by the ADA. Therefore, New Beginnings is associated with and provides housing to people with disabilities as defined in 42 *U.S.C.A.* §12102(1)(A).

202.    The requirements of the FHA and ADA are "essentially the same," accordingly, federal courts "have concluded that the FHAA analysis can be applied to ADA claims as well as such cases where claims are brought under [both] statutes." *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 914 (D.N.J. 2019)(citations omitted).

203.    Millville intentionally discriminated against New Beginnings' disabled residents by passing Resolution No. 192-2023 opposing New Beginnings' Application and attempting to introduce Resolution No. 192-2023 into evidence during the hearings on New Beginnings' Application.

204.    The discussion surrounding the passage of Resolution No. 192-2023 demonstrates that Millville opposed New Beginnings' Application solely due to its discriminatory animus towards New Beginnings' disabled clientele.

205.    Furthermore, the discussion surrounding the passage of the Resolution also demonstrates that Maurice River Township consulted with, worked in concert with, and/or encouraged the City of Millville to pass Resolution No. 192-2023 opposing New Beginnings' application before the Board.

206.    Millville's conduct violates the ADA.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.   Declaring that the Defendant the City of Millville has engaged in discrimination prohibited under the Americans with Disabilities Act ("ADA"), 42 *U.S.C.A.* §12131, *et seq.*;

B.   Awarding Compensatory damages, punitive damages, and any other relief the Court deems appropriate pursuant to 42 *U.S.C.A.* §12133 and 29 *U.S.C.A.* §749a;

C.   Awarding counsel fees and costs pursuant to 42 *U.S.C.A.* §12133 and 29 *U.S.C.A.* §749a; and

D.   Any other relief the Court deems equitable and just.

### <u>COUNT VI</u>
### 42 *U.S.C.A.* §1983
### (*Maurice River Township and Land Use Board*)

207.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if repeated and set forth at length herein.

208.    Under §1983 a person is prohibited from depriving any person of any rights, privileges, or immunities secured by the Constitution and laws of the United States while acting under color of law.

209.    The focus of §1983 is "to ensure a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." *Dennis v. Higgins*, 498 U.S. 439, 444 (1991). Section 1983 "provides a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Ibid.*

210.    Maurice River Township and its Land Use Board while acting under color of law deprived New Beginnings and its clientele of protected property interests through its discriminatory interpretation and application of its zoning ordinance.

211.    Maurice River Township and the Board's actions were motivated a discriminatory motive or intent, and their actions involved a reckless or callous indifference to the federally protected rights of New Beginnings disabled clientele.

212.    Maurice River Township and the Board's actions were willful and malicious.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.  Declaring that the Defendants Maurice River Township and its Land Use Board have violated 42 *U.S.C.A.* §1983;

B.  Awarding Compensatory damages, punitive damages, and any other relief the Court deems appropriate pursuant to 42 *U.S.C.A.* §1983;

C.  Awarding counsel fees and costs pursuant to 42 *U.S.C.A.* §1983; and

D.  Any other relief the Court deems equitable and just.

<u>**COUNT VII**</u>
**42 *U.S.C.A.* §1983**
(***City of Millville***)

213.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if repeated and set forth at length herein.

214.    Under §1983 a person is prohibited from depriving any person of any rights, privileges, or immunities secured by the Constitution and laws of the United States while acting under color of law.

215.    The focus of §1983 is "to ensure a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." *Dennis v. Higgins*, 498 U.S. 439, 444 (1991). Section 1983 "provides a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Ibid*.

216.    The City of Millville while acting under color of law deprived New Beginnings and its clientele of protected property interests by intentionally discriminating against New Beginnings' disabled residents by passing Resolution No. 192-2023 opposing New Beginnings' Application and attempting to introduce Resolution No. 192-2023 into evidence during the hearings on New Beginnings' Application.

217.    The discussion surrounding the passage of Resolution No. 192-2023 demonstrates that Millville opposed New Beginnings' Application solely due to its discriminatory animus towards New Beginnings' disabled clientele and that Millville's goal was to deprive New Beginnings and its disabled clientele of their federally protected rights.

218.    Millville's actions were motivated a discriminatory motive or intent, and their actions involved a reckless or callous indifference to the federally protected rights of New Beginnings disabled clientele.

219.    Millville's actions were willful and malicious.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.  Declaring that the Defendant the City of Millville violated 42 *U.S.C.A.* §1983;

B.  Awarding Compensatory damages, punitive damages, and any other relief the Court deems appropriate pursuant to 42 *U.S.C.A.* §1983;

C.  Awarding counsel fees and costs pursuant to 42 *U.S.C.A.* §1983; and

D.  Any other relief the Court deems equitable and just.

<u>**COUNT VIII**</u>
**Rehabilitation Act, 29 *U.S.C.A.* §794**
**(*Maurice River Township and Land Use Board*)**

220.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if set forth at length herein.

221.    The Rehabilitation Act, 29 U.S.C. § 794, provides that no qualified individual with a disability shall, solely by reason of his or her disability, be excluded from participation in or be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance.  29 *U.S.C.A.* §794(a).

222.    The Rehabilitation Act defines "program" or "activity" as "all of the operations" of specific entities, including "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 *U.S.C.A.* §794(b)(1)(A).

223.    Because the requirements of the FHA and the Rehabilitation Act are "essentially the same," the "FHAA analysis can be applied to . . . Rehabilitation Act claims as well as such cases where claims are brought under [both] statutes." *Yates Real Est., Inc.,* 404 F. Supp. 3d at 914.

224.    Upon information and belief, the City and Board receive federal financial assistance.

225.    The population that New Beginnings serves are qualified persons with disabilities under the Rehabilitation Act and their disabilities substantially impair one or more major life activities.

226.    The Board denied New Beginnings' Application solely by reason of their own and the public's discriminatory animus and bias against individuals in recovery and New Beginnings' desire to provide housing for such individuals.

227.    The Township maintains oversight and control of its Land Use Board.

228.    Moreover, the Township consulted with, worked in concert with, and/or encouraged the City of Millville to pass Resolution No. 192-2023 opposing New Beginnings' application before the Board.

229.    The City and the Board violated the Rehabilitation Act by refusing to provide a reasonable accommodation to allow the disabled individuals to reside in the Township at New Beginnings' Property.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A.  Declaring that the Defendants Maurice River Township and its Land Use Board engaged in discrimination prohibited under the Rehabilitation Act, 29 U.S.C. §794;

B.  Awarding Compensatory damages, punitive damages, and any other relief the Court deems appropriate pursuant to 29 *U.S.C.A.* §749a;

C.  Awarding counsel fees and costs pursuant to 29 *U.S.C.A.* §749a; and

D.  Any other relief the Court deems equitable and just.

## <u>COUNT IX</u>
## Rehabilitation Act, 29 *U.S.C.A.* §794
## (*City of Millville*)

230.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if set forth at length herein.

231.    The Rehabilitation Act, 29 U.S.C. § 794, provides that no qualified individual with a disability shall, solely by reason of his or her disability, be excluded from participation in or be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance.  29 *U.S.C.A.* §794(a).

232.    The Rehabilitation Act defines "program" or "activity" as "all of the operations" of specific entities, including "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 *U.S.C.A.* §794(b)(1)(A).

233.    Because the requirements of the FHA and the Rehabilitation Act are "essentially the same," the "FHAA analysis can be applied to . . . Rehabilitation Act claims as well as such cases where claims are brought under [both] statutes." *Yates Real Est., Inc.,* 404 F. Supp. 3d at 914.

234.    Upon information and belief, the City of Millville receives federal financial assistance.

235.    The population that New Beginnings serves are qualified persons with disabilities under the Rehabilitation Act and their disabilities substantially impair one or more major life activities.

236.    Millville discriminated against New Beginnings' and its disabled clientele by passing Resolution No. 192-2023 opposing New Beginnings' Application and attempting to introduce Resolution No. 192-2023 into evidence during the hearings on New Beginnings' Application.

237.    The discussion surrounding the passage of Resolution No. 192-2023 demonstrates that Millville opposed New Beginnings' Application solely due to its discriminatory animus

towards New Beginnings' disabled clientele and that Millville's goal was to deprive New Beginnings and its disabled clientele of their federally protected rights.

**WHEREFORE**, Plaintiff respectfully demands a judgment as follows:

A. Declaring that the Defendant the City of Millville has engaged in discrimination prohibited under the Rehabilitation Act, 29 U.S.C. §794;

B. Awarding Compensatory damages, punitive damages, and any other relief the Court deems appropriate pursuant to 29 *U.S.C.A.* §749a;

C. Awarding counsel fees and costs pursuant to 29 *U.S.C.A.* §749a; and

D. Any other relief the Court deems equitable and just.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury in this action of all issues so triable.

Respectfully submitted,

**/s/_Keith A. Davis_**
Keith A. Davis
NEHMAD DAVIS & GOLDSTEIN, P.C.
4030 Ocean Heights Avenue
Egg Harbor Township, NJ 08234
kdavis@ndglegal.com
Telephone: 609.927.1177
Facsimile: 609.926.9721

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to L. Civ. R. 11.2, Plaintiff certifies that the matter in controversy in this case is the subject of one pending actions in New Jersey Superior Court under the Docket No.: CUM-671-23.

  /s/ Keith A. Davis
Keith A. Davis, Esquire